**No. 24-30552**

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

IFG PORT HOLDINGS LLC,
*Plaintiff-Appellant,*

v.

PORT OF LAKE CHARLES,
*Defendant-Appellee.*

On Appeal from the United States District Court
for the Western District of Louisiana

# *AMICI CURIAE* BRIEF OF FORMER MAGISTRATE AND DISTRICT COURT JUDGES IN SUPPORT OF PLAINTIFF-APPELLANT

David R. Carpenter
SIDLEY AUSTIN LLP
350 South Grand Avenue
Los Angeles, California 90071
Telephone: 213-896-6679
drcarpenter@sidley.com

Chelsea A. Priest
SIDLEY AUSTIN LLP
2021 McKinney Avenue
Suite 2000
Dallas, Texas 75201
Telephone: 214-981-3476
cpriest@sidley.com

*Attorneys for Amici Curiae Former Magistrate and District Court Judges*

# TABLE OF CONTENTS

**Page**


INTERESTS OF *AMICI CURIAE* .................................................. 1

FRAP RULE 29 STATEMENT ........................................................ 3

SUMMARY OF ARGUMENT .......................................................... 4

ARGUMENT ................................................................................ 6

A. Magistrate Judges Play an Indispensable Role in Fostering Efficiency and Efficacy Within the Federal Judicial System ............................................................ 6

B. A Constructive Knowledge Standard Aligns with the Statutory Text and Precedent, and Is Appropriate to Protect Against "Opportunistic Litigant[s]" and "Gamesmanship" ...................................................... 10

C. Appellee's Alternative Approach Is Not Practical or Workable for Magistrate Judges or District Judges... 16

CONCLUSION ............................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Decisions**

*Caperton v. A.T. Massey Coal Co.*,
556 U.S. 868 (2009) .......... 16

*Goldman, Sachs & Co. v. Athena Venture Partners, L.P.*,
803 F.3d 144 (3d Cir. 2015) .......... 14

*Gov. Fin. Serv. One Ltd. v. Peyton Place, Inc.*,
62 F.3d 767, 775 (5th Cir. 1995) .......... 15

*IFG Port Holdings, L.L.C. v. Lake Charles Harbor & Terminal Dist.*,
82 F.4th 402 (5th Cir. 2023) .......... 10

*Intel Corp. Inv. Pol'y Comm. v. Sulyma*,
589 U.S. 178 (2020) .......... 11, 13

*Jimenez v. Guerrero*,
133 F.4th 483 (5th Cir. 2025) .......... 16

*Light-Age, Inc. v. Ashcroft-Smith*,
922 F.3d 320 (5th Cir. 2019) .......... 14

*Peretz v. United States*,
501 U.S. 923 (1991) .......... 8

*Roell v. Withrow*,
538 U.S. 580 (2003) .......... 5, 7, 11, 13, 15-16

*United States v. Dobey*,
751 F.2d 1140 (10th Cir. 1985) .......... 13

*Wellness Int'l Network v. Sharif*,
575 U.S. 665 (2015) .................................................................. 7, 9

**Statutes, Rules, General Orders**

28 U.S.C. § 631(b) ................................................................ 8

28 U.S.C. § 636 .......................................................... 5-6, 13-14

Federal Magistrates Act of 1968, 82 Stat. 1107 ............................. 6

Federal Magistrates Act of 1979, 93 Stat. 643 ........................... 6-7

Judicial Improvements Act of 1990, 104 Stat. 5089 ....................... 7

Fed. R. Civ. P. 60(b)(2) ........................................................ 15

**Other Authorities**

H.R. REP. NO. 1629, 90 Cong., 2d Sess. 11 (1968) .......................... 6

S. REP. NO. 371, 90 Cong., 1 Sess. 9 (1967) .................................. 6

Judicial Conference Committee on the Administration of the
Magistrate Judges System, *Policies and Principles for
Magistrate Judge Utilization* (June 2022) ..................................... 9

## INTERESTS OF *AMICI CURIAE*

Amici are former magistrate and district court judges who served in district courts around the country, including in the Fifth Circuit. They include judges who served in districts where many if not most attorneys and judges were professionally or socially acquainted—situations common in smaller legal markets. Several have overseen proceedings involving counsel they knew casually or through bar associations. Amici thus can offer insight into the real-world consequences of a rule requiring exhaustive disclosures of every professional or social connection. As such, Amici have a unique and valuable perspective to bring to the question presented and are interested in this case because of its widespread implications for both magistrate judges and district judges.

Rather than simply repeat the legal arguments offered by Appellant, Amici seek to assist this Court by providing historical and practical context. Amici first discuss the roots and importance of magistrate judge utilization in promoting efficient and effective docket management, and how magistrate judges often have deep ties to the legal communities in which they serve and are selected after

rigorous review based on that experience. Amici then explain why a constructive knowledge standard for vacatur best aligns with the statutory text and purpose, and why the alternative standard applied in the proceedings below would be unworkable for magistrate judges and district judges alike.

List of Amici Curiae:

Hon. W. Royal Furgeson, Jr. (ret.)
Former District Judge
Western District of Texas
Northern District of Texas

Hon. Mildred E. Methvin (ret.)
Former Magistrate Judge
Western District of Louisiana

Hon. Brian Owsley (ret.)
Former Magistrate Judge
Southern District of Texas

Hon. Viktor V. Pohorelsky (ret.)
Former Magistrate Judge
Eastern District of New York

Hon. Stephen Wm. Smith (ret.)
Former Magistrate Judge
Southern District of Texas

## FRAP RULE 29 STATEMENT

Pursuant to FRAP Rule 29(a) and Circuit Rule 29-3, Amici have sought the consent of the parties to file this amicus brief. Counsel for Appellant and Appellee have consented to the filing of this brief.

Pursuant to FRAP Rule 29(a), Amici have accordingly filed an accompanying motion for leave to file this amicus brief.

No counsel for any party authored this brief in whole or in part.

No party, person, or entity other than Amici and their undersigned counsel contributed money intended to fund preparing or submitting this brief.

## SUMMARY OF ARGUMENT

Magistrate judges serve a critical role in our judicial system, and the goal of maximizing federal judicial utility and effectiveness is at the heart of their purpose. Since 1968, Congress has continuously built out magistrate judges' responsibilities in recognition of their benefit to our federal judicial system, both for district courts and for parties seeking efficient resolution.

The community-focused component of magistrate judge recruitment is a critical feature of the magistrate system. Applicants for magistrate judge positions are evaluated, in part, by a local panel made up of both attorneys and non-attorneys. Magistrate judges are typically drawn from the communities in which they serve and often have years of experience in public and community service.

Consent jurisdiction plays a crucial role in this system, and both the Supreme Court and the Judicial Conference endorse flexible consent practices that foster effective magistrate judge recruitment and counteract docket crises in district courts. As the statutory text indicates, only "under extraordinary circumstances" should a party be able to vacate a reference to a magistrate judge. 28 U.S.C.

§ 636(c)(4). And the Supreme Court itself has rejected an interpretation of the statute that would risk "gamesmanship" by allowing an "opportunistic litigant" to revoke consent following an unfavorable outcome. *Roell v. Withrow*, 538 U.S. 580, 590 (2003).

With this context, a constructive knowledge standard best aligns with the objectives and practical realities of our judicial system. That is particularly true when, as here, the objecting party concedes it is not alleging actual bias or intentional concealment.

The district court's actual knowledge standard, in contrast, is unworkable in practice and would diminish the functionality and integrity of magistrate judge proceedings. It would also negatively impact district courts whose own time would be burdened by an onslaught of vacatur motions from disgruntled litigants; the need to conduct invasive discovery into their magistrate judge colleagues; and wasted resources from having to retry entire cases based on information that a diligent litigant could have discovered at the outset. Accordingly, Amici support Appellant's request that the Court adopt a constructive knowledge standard for consent to magistrate judge referrals.

## ARGUMENT

### A. Magistrate Judges Play an Indispensable Role in Fostering Efficiency and Efficacy Within the Federal Judicial System.

***Historical overview.*** The legacy of the magistrate judge system is anchored in promoting federal courts' utility, efficiency, and efficacy for parties seeking relief. Congress created the position of "magistrate" judge in the Federal Magistrates Act of 1968, 82 Stat. 1107, after passing sweeping civil rights legislation recognizing new private, federal rights of action. Federal dockets swelled as parties increasingly asserted these new rights; the magistrate judge position was created, in part, to relieve some of that pressure by creating an alternative to adjudication before district court judges. H.R. REP. NO. 1629, 90 Cong., 2d Sess. 11 (1968); S. REP. NO. 371, 90 Cong., 1 Sess. 9 (1967).

Congress expanded magistrate judges' responsibilities with the Federal Magistrates Act of 1979, 93 Stat. 643. Critically, Congress gave magistrate judges the authority to preside over civil cases in their entirety with the parties' consent. *Id.* (codified at 28 U.S.C. § 636(c)). As the Supreme Court noted, the consent jurisdiction

provision of the Federal Magistrates Act of 1979 was intended to provide "a vehicle by which litigants can consent, freely and voluntarily, to a less formal, more rapid, and less expensive means of resolving their civil controversies." *Roell*, 538 U.S. at 589 (citation omitted).

In 1990, Congress amended the rules governing consent jurisdiction to provide district judges and clerks with greater freedom in communicating with parties about the availability of magistrate judges to hear their cases. Judicial Improvements Act of 1990, 104 Stat. 5089. Congress also changed the title of the magistrate office to "United States Magistrate Judge."

Magistrate judges, together with bankruptcy judges, now exceed federal district and circuit judges in number. "[I]t is no exaggeration to say that without the distinguished service of these judicial colleagues, the work of the federal court system would grind nearly to a halt." *Wellness Int'l Network v. Sharif*, 575 U.S. 665, 668 (2015). "It can hardly be denied that the system created by the Federal Magistrates Act has exceeded the highest expectations of the legislators who conceived it. In modern federal practice, federal

magistrates account for a staggering volume of judicial work." *Peretz v. United States*, 501 U.S. 923, 928 n.5 (1991) (citation omitted).

***How magistrate judges are selected.*** Magistrate judges are selected through a two-step process. After vacant magistrate judge positions are publicly announced, "merit selection panels, composed of residents of the individual judicial districts" and including both attorneys and non-attorneys, "assist [district] courts in identifying and recommending persons who are best qualified to fill such positions." 28 U.S.C. § 631(b)(5). The panel reviews applications, conducts interviews, and presents a slate of candidates to the district court. *Id.* District judges evaluate the candidates and conduct further interviews before selecting the magistrate judge. *Id.*

The screening process across jurisdictions is highly rigorous, and selected magistrate judges have diverse and robust backgrounds. They include former state judges, federal prosecutors and defenders, attorneys who previously served in state governments, and private practitioners with extensive criminal and civil experience. They are selected after building strong reputations in their communities, often

after years of public service or service in local bar associations and organizations.

***Consent jurisdiction today.*** The Supreme Court has recognized consent jurisdiction's solid historical footing in addition to its vital role in federal courts' functioning. "Adjudication by consent is nothing new" and can be traced to "the early years of the Republic." *Wellness Int'l*, 575 U.S. at 674 (citation omitted); *see also id.* at 683 ("Adjudication based on litigant consent has been a consistent feature of the federal court system since its inception.").

The Judicial Conference has similarly stressed the critical function of consent jurisdiction:

> Of all the ways in which magistrate judges assist the court, exercising civil consent authority is probably the greatest time-saver for district judges and often, litigants. It also enhances the court's flexibility when addressing long-term judicial vacancies and sudden caseload increases and the court's ability to recruit high-caliber candidates for vacant magistrate judge positions.

Judicial Conference Committee on the Administration of the Magistrate Judges System, *Policies and Principles for Magistrate Judge Utilization* at 2 (June 2022).

As the Judicial Conference has highlighted, a strong program of consent jurisdiction is important for another reason: "recruit[ing] high-caliber candidates for vacant magistrate judge positions." *Id.* Promoting the effective utilization of magistrate judges thus creates a virtuous cycle of attracting highly qualified public servants who play a critical role in supporting district judges to manage federal dockets.

### B. A Constructive Knowledge Standard Aligns with the Statutory Text and Precedent, and Is Appropriate to Protect Against "Opportunistic Litigant[s]" and "Gamesmanship."

Amici fully appreciate that consent is critically necessary to magistrate judge jurisdiction. Amici also agree with this Court that consent must be given "knowingly and intelligently." *IFG Port Holdings, L.L.C. v. Lake Charles Harbor & Terminal Dist.*, 82 F.4th 402, 416 (5th Cir. 2023). The question is what standard applies—constructive knowledge or actual knowledge—when, as here, a litigant knowingly and voluntarily agrees to a trial before a magistrate judge, but after losing, claims to have been unaware of connections between the magistrate judge and counsel for the other party.

Constructive knowledge, in this context, refers to information that a party would have discovered through the exercise of reasonable diligence before consenting to magistrate judge jurisdiction. *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 185 (2020) (describing constructive knowledge as "something that a reasonably diligent person would have learned"). As also noted in Appellant's Brief, courts routinely apply a constructive knowledge or reasonable diligence standard in evaluating the validity of consent, waiver, or forfeiture in analogous contexts, such as jury selection, arbitration, or post-judgment relief under Rule 60(b). Likewise here, a constructive knowledge standard best aligns with precedent and the statutory text and objectives.

The Supreme Court's decision in *Roell* is instructive. The question there was whether consent inferred from conduct—rather than express written consent—was sufficient where a party knowingly proceeded to trial before a magistrate judge but never completed the consent form. *Roell*, 538 U.S. at 586-90. The Supreme Court held that inferred consent was sufficient for two reasons. First, while the statute requires "the consent of the parties," it does not

mandate a specific form of consent. *Id.* at 587-88. Second, while the Court recognized the benefit of a strict rule, the Court was concerned with the "downside" of having "a full and complicated trial wasted at the option of an undeserving and possibly opportunistic litigant." *Id.* at 588-90.

The Court emphasized that the litigant there "was made aware of the need for consent and the right to refuse it" and still voluntarily proceeded to trial. *Id.* at 590. Under such circumstances, inferring consent "checks the risk of gamesmanship by depriving parties of the luxury of waiting for the outcome before denying the magistrate judge's authority." *Id.* As the Court observed, "[j]udicial efficiency is served; the Article III right is substantially honored." *Id.*; *see also id.* at 590–91 (citing precedent "eschewing" interpretation of Federal Magistrates Act that would "frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts") (citation omitted).

Both aspects of *Roell*'s rationale support a constructive knowledge standard here.

*First*, the statute's text speaks in terms of "consent," without mandating the form or content of disclosures that magistrate judges must provide. 28 U.S.C. § 636(c)(1). A constructive knowledge standard is consistent with the statutorily required "consent" because the litigant must be "made aware of the need for consent and the right to refuse it," *Roell*, 538 U.S. at 590, and constructive knowledge applies only to information "that a reasonably diligent person would have learned," *Intel Corp.*, 589 U.S. at 185. A constructive knowledge standard thus aligns with the purpose of the Federal Magistrates Act by promoting efficiency and utilization while still ensuring that parties have a meaningful opportunity to consider whether to proceed before a magistrate judge.

As Appellant points out, courts have applied constructive knowledge as the standard for consent to magistrate judge jurisdiction in other cases. *See United States v. Dobey*, 751 F.2d 1140, 1142-43 (10th Cir. 1985) (finding consent valid despite litigant's claim that he did not know magistrate judges "lacked the attributes of Article III judges"). The constructive knowledge standard also applies in the analogous context of arbitration, which—similar to

magistrate judge consent jurisdiction—involves waiver of the right to proceed before an Article III judge and exists to provide a more efficient, alternative means of litigation. *See, e.g.*, *Light-Age, Inc. v. Ashcroft-Smith*, 922 F.3d 320, 323 (5th Cir. 2019) (denying motion to vacate arbitration award; party had constructive knowledge of arbitrator's contemporaneous employment at a law firm because employment was discoverable "simply by . . . running a brief internet search"); *Goldman, Sachs & Co. v. Athena Venture Partners, L.P.*, 803 F.3d 144, 150 (3d Cir. 2015) (citation omitted) (finding that without a constructive knowledge standard, a party could "wait[ ] until [it] los[es] and then almost immediately beg[i]n scouring the internet for anything that might suggest one arbitrator or another was biased against it," "result[ing] in endless hearings within hearings").

*Second*, a constructive knowledge standard is consistent with the need to show "extraordinary circumstances" to vacate a reference to a magistrate judge, 28 U.S.C. § 636(c)(4)—especially when, as here, a party is seeking to nullify a trial it just lost. Otherwise, post-judgment challenges by disgruntled parties could soar, undermining

the integrity of magistrate judge proceedings and the efficiency Congress intended the magistrate judge system to provide. Requiring reasonable diligence helps protect against "the risk of gamesmanship" and situations in which "a full and complicated trial [is] wasted at the option of an undeserving and possibly opportunistic litigant" who takes the "luxury of waiting for the outcome" before researching the magistrate judge and then challenging her authority. *Roell*, 538 U.S. at 590; *cf.* Fed. R. Civ. P. 60(b)(2) (allowing relief from judgment based on newly discovered evidence only if such evidence "could not have been discovered" earlier "with reasonable diligence"); *Gov. Fin. Serv. One Ltd. v. Peyton Place, Inc.*, 62 F.3d 767, 775 (5th Cir. 1995) (explaining that "reasonable diligence" requirement also applies to such requests for new trial under Rule 59).

Tellingly, Defendant-Appellee here conceded that its challenge "is not based on any intentional acts of fraud, bias, or undue influence by the Magistrate Judge." ECF 483-1 at 8. If a losing party both (a) could have known the information had it acted with reasonable diligence and (b) is not alleging that the matter *actually* resulted in bias or tainted the outcome, then Amici fail to see how

the nondisclosure could arise to a constitutional dimension or constitute extraordinary circumstances sufficient to nullify a judgment. *Cf. Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009) (observing that "most matters relating to judicial disqualification [do] not rise to a constitutional level"); *Jimenez v. Guerrero*, 133 F.4th 483, 493 (5th Cir. 2025) (same).

In sum, the actual knowledge standard applied by the district court below is not required by the Constitution, relevant statutes, or case law. Parties with constructive knowledge of a connection should not be able to successfully and retroactively rescind consent, particularly when they never made a reasonable effort to uncover pertinent information. Rather, a constructive knowledge standard is the better rule: "Judicial efficiency is served; the Article III right is substantially honored." *Roell*, 538 U.S. at 590.

### C. Appellee's Alternative Approach Is Not Practical or Workable for Magistrate Judges or District Judges.

Appellee's alternative approach invites a dangerous precedent in which parties may comb through years-old social media content or community ties *after* an unfavorable result, weaponizing ordinary relationships to undermine final judgments. This could lead to

retroactive challenges to dozens of cases tried by a magistrate judge in a close-knit legal community, even when no actual bias is alleged or proven.

From a practical perspective, requiring that parties have actual knowledge of a relationship to consent to referral is an untenable standard. Magistrate judges are, by virtue of their selection process, drawn from the legal communities in which they serve. They are typically selected after years of public service and are thus highly likely to have connections to many parties and litigants. This pattern is especially prevalent in small legal communities like Lake Charles, but it is far from exclusive to those settings.

Thus, magistrate judges subject to an actual knowledge standard would spend most of their time making disclosures and defending against challenges. Inevitably, they may fail to disclose a tangential connection that losing parties then seize on. This result would be impractical as well as destructive to the central purposes of magistrate judge jurisdiction: relieving pressure on district courts and providing parties with an efficient alternative route to judicial resolution.

The actual knowledge standard applied below also all but guarantees that magistrate judges will eventually face an invasive post-challenge evidentiary hearing like that which Judge Kay underwent in this case. For involved and upstanding community members like magistrate judges, this process—having to share details about their relationships with and opinions of various connections—would be offensive and fraught. In addition to diminishing the utility and integrity of magistrate judge jurisdiction, the prevalence of such an invasive process could deter potential applicants for magistrate judge positions, further eroding the functioning of magistrate courts.

And an actual knowledge standard causes further problems beyond magistrate judges: district courts would be overrun with challenges to magistrate judge referrals, again undercutting the entire purpose of magistrate jurisdiction in the first place. Under an actual knowledge standard, the bar for consent-based challenges is extremely low; parties need not show a diligent effort to uncover publicly available information at any time prior to judgment and could even strategically delay to raise concerns until after a negative

result. This could skyrocket the number of challenges, however unfounded, that magistrate judges must field and that district courts must then review.

This undue burdening of district courts runs counter to the purpose of consent jurisdiction and the magistrate judge system. Consent jurisdiction systematically benefits parties, magistrate judges, and district courts alike; it streamlines referrals so as to maximize federal courts' functionality while still ensuring that parties can decline consent to magistrate judge referral if desired. Lowering the bar for consent-based challenges cuts the benefits of the magistrate system off at the knees.

## CONCLUSION

For the foregoing reasons, Amici respectfully submit that the Court should adopt a constructive knowledge standard and that the decision below be vacated so that the matter can be decided under the correct standard.

Dated: July 3, 2025

Respectfully submitted,

SIDLEY AUSTIN LLP

By:/s/ *David R. Carpenter*
David R. Carpenter
Attorney for *Amici Curiae*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in Circuit FRAP 32(a)(5)(A) and FRAP 29(a)(5). This brief uses proportional typeface and 14-point font, and contains 3,164 words.

Dated: July 3, 2025

By:/s/ *David R. Carpenter*
David R. Carpenter