**No. 24-30552**

IN THE
**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

**IFG PORT HOLDINGS, L.L.C.,**
*Plaintiff-Appellant*,

v.

**LAKE CHARLES HARBOR & TERMINAL DISTRICT, doing business as PORT OF LAKE CHARLES,**
*Defendant-Appellee*.

---

On Appeal from the United States District Court for the Western District of Louisiana, No. 2:16-CV-146

---

On Petition for Rehearing En Banc
(Stewart, Graves, and Oldham, Circuit Judges)

---

# BRIEF OF AMICI CURIAE FORMER MAGISTRATE, DISTRICT, AND BANKRUPTCY JUDGES IN SUPPORT OF PLAINTIFF-APPELLANT'S PETITION FOR REHEARING EN BANC

---

David R. Carpenter
SIDLEY AUSTIN LLP
350 South Grand Avenue
Los Angeles, California 90071
Telephone: 213-896-6679
drcarpenter@sidley.com

Chelsea A. Priest
SIDLEY AUSTIN LLP
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone: 214-981-3476
cpriest@sidley.com

*Attorneys for Amici Curiae Former Magistrate, District, and Bankruptcy Judges*

**SUPPLEMENTAL CERTIFICATE OF INTERESTED PERSONS**

*IFG Port Holdings, L.L.C. v. Lake Charles Harbor & Terminal District*, No. 24-30552

The undersigned counsel of record certifies that, in addition to the persons and entities listed in the parties' certificates of interested persons, the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. Amici Curiae: Hon. W. Royal Furgeson, Jr. (ret.); Hon. Mildred E. Methvin (ret.); Hon. Brian Owsley (ret.); Hon. Viktor V. Pohorelsky (ret.); Hon. Stephen Wm. Smith (ret.); Hon. Judith K. Fitzgerald (ret.).

2. Counsel for Amici Curiae: David R. Carpenter and Chelsea A. Priest, Sidley Austin LLP.

3. Amici are individuals. No amicus is a corporation, and no publicly held corporation owns any interest in any amicus.

Dated: October 20, 2026

*/s/ David R. Carpenter*
David R. Carpenter
*Counsel for Amici Curiae*

# TABLE OF CONTENTS

**Page**

INTEREST OF AMICI CURIAE ........ 1

FED. R. APP. P. 29 STATEMENT ........ 1

INTRODUCTION AND SUMMARY OF ARGUMENT ........ 2

ARGUMENT ........ 4

I. Magistrate Judges And Bankruptcy Judges Play An Indispensable Role In The Federal Judicial System, And The Panel's Rule Threatens Both ........ 4

II. The Decision Is Contrary To The Statute And Precedent ........ 8

III. The Panel's Rule Is Not Practical Or Workable For Magistrate Judges, Bankruptcy Judges, Or District Judges ........ 11

CONCLUSION ........ 14

CERTIFICATE OF COMPLIANCE ........ 15

CERTIFICATE OF SERVICE ........ 16

APPENDIX: LIST OF AMICI CURIAE ........ 17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*BLOM Bank SAL v. Honickman*,
605 U.S. 204 (2025) .................... 8

*Caperton v. A.T. Massey Coal Co.*,
556 U.S. 868 (2009) .................... 9

*IFG Port Holdings, L.L.C. v. Lake Charles Harbor & Terminal District*,
No. 24-30552 (5th Cir. Sept. 8, 2026) .................... passim

*Kerns v. First State Bank of Ben Wheeler (In re Kerns)*,
130 F.4th 455 (5th Cir. 2025) .................... 9

*Light-Age, Inc. v. Ashcroft-Smith*,
922 F.3d 320 (5th Cir. 2019) .................... 9

*Liljeberg v. Health Services Acquisition Corp.*,
486 U.S. 847 (1988) .................... 8

*Norris v. Schotten*,
146 F.3d 314 (6th Cir. 1998) .................... 9

*Roell v. Withrow*,
538 U.S. 580 (2003) .................... 5, 10

*United States v. Dobey*,
751 F.2d 1140 (10th Cir. 1985) .................... 9

*United States v. Ruiz*,
536 U.S. 622 (2002) .................... 8

*Wellness International Network, Ltd. v. Sharif*,
575 U.S. 665 (2015) .................... 5, 6, 7, 10

## Statutes and Rules

28 U.S.C. § 157(b), (c) .......... 2, 6

28 U.S.C. § 631(b)(5) .......... 5

28 U.S.C. § 636(c) .......... 2, 5, 8

Federal Magistrates Act of 1968, 82 Stat. 1107 .......... 4

Federal Magistrates Act of 1979, 93 Stat. 643 .......... 4

Judicial Improvements Act of 1990, 104 Stat. 5089 .......... 3

Fed. R. App. P. 29(b) .......... 2

Fed. R. Bankr. P. 7008 .......... 7

Fed. R. Bankr. P. 7012(b) .......... 7

## Other Authorities

H.R. Rep. No. 1629, 90th Cong., 2d Sess. (1968) .......... 4

S. Rep. No. 371, 90th Cong., 1st Sess. (1967) .......... 4

Judicial Conference Committee on the Administration of the Magistrate Judges System, *Policies and Principles for Magistrate Judge Utilization* (June 2022) .......... 6

## INTEREST OF AMICI CURIAE

Amici (identified in the Appendix) are former federal magistrate, district, and bankruptcy judges, including judges from this Circuit and the Western District of Louisiana, from which this appeal arises. They include judges from districts where most attorneys and judges are professionally or socially acquainted, as is especially common in smaller legal markets. Several have overseen proceedings involving counsel they knew casually or through bar associations. Amici filed a merits-stage brief providing their unique perspective on why an actual-knowledge standard would be unworkable and would undermine the benefits of consent jurisdiction in managing an overcrowded federal docket. Doc. 78.

The panel majority adopted an actual-knowledge standard as a constitutional rule, and the dissent relied on amici's brief in explaining why that rule threatens magistrate and bankruptcy adjudication nationwide. Op. 29 (Oldham, J., dissenting). Amici write in support of en banc review because of the rule's widespread implications.

## FED. R. APP. P. 29 STATEMENT

No counsel for any party authored this brief in whole or in part. No party, no party's counsel, and no person other than amici and their

counsel contributed money intended to fund preparing or submitting this brief. Amici are filing this brief with a motion for leave under Federal Rule of Appellate Procedure 29(b)(2). Appellant and Appellee consent to the filing.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The panel held that a party's consent to a magistrate judge is valid only if the party "actually know[s] the nature and extent of a magistrate judge's potential conflict," even if those facts reasonably could have been discovered earlier. *IFG Port Holdings, L.L.C. v. Lake Charles Harbor & Terminal Dist.*, No. 24-30552, slip op. at 12 (5th Cir. Sept. 8, 2026) ("Op."). Because the panel grounded that rule in the Constitution, it governs every consent referral under 28 U.S.C. § 636(c) and, by its logic, every consent-based adjudication by a bankruptcy judge under 28 U.S.C. § 157(c)(2). Amici agree that rehearing en banc is warranted and write to elaborate on three points.

Part I explains why the question is exceptionally important, given the critical role of magistrate and bankruptcy judges in managing the federal docket. Both systems depend, in significant part, on consent jurisdiction and the finality of consent judgments. The panel's rule

removes that finality and undermines the benefits of these systems by inviting vacatur motions from disgruntled litigants—even absent actual bias or intentional concealment, and even where the potential conflict could have been discovered earlier.

Part II explains why the rule is contrary to the statute's "extraordinary circumstances" requirement and to precedent of the Supreme Court, this Court, and sister circuits. Indeed, in addressing consent jurisdiction, the Supreme Court has adopted a pragmatic approach that protects parties' rights while promoting efficiency and checking the risk of gamesmanship.

Part III emphasizes why the rule is unworkable. As amici previously explained and the dissent observed, magistrate judges (as well as bankruptcy judges) "are 'by virtue of their selection process, drawn from the legal communities in which they serve'" and are "likely to have connections to many parties and litigants." Op. 29 (Oldham, J., dissenting). That is especially true in small legal communities like Lake Charles or a local bankruptcy bar. The panel's rule—which requires vacatur unless the "nature and extent" of every connection is "actually known" and "fully underst[oo]d" (Op. 2, 9)—lacks administrable

standards, promotes gamesmanship, and guarantees intrusive post-judgment hearings and retrials that will burden Article I and Article III judges alike.

Amici thus support granting the petition for rehearing en banc.

## ARGUMENT

### I. Magistrate Judges And Bankruptcy Judges Play An Indispensable Role In The Federal Judicial System, And The Panel's Rule Threatens Both.

***Historical overview.*** The magistrate judge system is anchored in promoting the federal courts' efficiency and efficacy for parties seeking relief. Congress created the position of "magistrate" in the Federal Magistrates Act of 1968, 82 Stat. 1107, after passing sweeping civil rights legislation recognizing new private, federal rights of action. As dockets swelled with these new claims, the magistrate position was created in part to relieve that pressure by offering an alternative to adjudication before district judges. H.R. Rep. No. 1629, 90th Cong., 2d Sess. 11 (1968); S. Rep. No. 371, 90th Cong., 1st Sess. 9 (1967).

In the Federal Magistrates Act of 1979, Congress expanded magistrate judges' responsibilities, authorizing them to preside over entire civil cases with the parties' consent. 93 Stat. 643 (codified at 28

U.S.C. § 636(c)). The consent provision was intended to provide "a vehicle by which litigants can consent, freely and voluntarily, to a less formal, more rapid, and less expensive means of resolving their civil controversies." *Roell v. Withrow*, 538 U.S. 580, 589 (2003) (citation omitted). In 1990, Congress further encouraged consent referrals and retitled the office "United States Magistrate Judge." Judicial Improvements Act of 1990, 104 Stat. 5089.

Magistrate judges, together with bankruptcy judges, now exceed federal district and circuit judges in number. "[I]t is no exaggeration to say that without the distinguished service of these judicial colleagues, the work of the federal court system would grind nearly to a halt." *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 668 (2015).

***How magistrate judges are selected.*** Magistrate judges are selected in two steps. After a vacancy is announced, "merit selection panels, composed of residents of the individual judicial districts," including attorneys and non-attorneys, "assist [district] courts in identifying and recommending persons who are best qualified to fill such positions." 28 U.S.C. § 631(b)(5). District judges then evaluate the candidates and make the appointment. Magistrate judges have diverse

backgrounds and are chosen after building strong community reputations, often through years of public service.

***Magistrate judge consent jurisdiction today.*** "Adjudication by consent is nothing new" and can be traced to "the early years of the Republic." *Wellness*, 575 U.S. at 674 (citation omitted). The Judicial Conference likewise stresses that "[o]f all the ways in which magistrate judges assist the court, exercising civil consent authority is probably the greatest time-saver for district judges and often, litigants," and that it enhances the court's "ability to recruit high-caliber candidates for vacant magistrate judge positions." Judicial Conference Committee on the Administration of the Magistrate Judges System, *Policies and Principles for Magistrate Judge Utilization* at 2 (June 2022).

***Consent jurisdiction in bankruptcy cases.*** Consent plays a similar role in bankruptcy proceedings. While bankruptcy judges may decide "core proceedings" by statute, 28 U.S.C. § 157(b), in non-core proceedings, they (like magistrate judges) must submit proposed findings to the district court and may enter final judgment only "with the consent of all the parties." 28 U.S.C. § 157(c)(1)–(2). Consent is also required for

claims that are statutorily "core" but that Supreme Court precedent otherwise reserves to Article III judges. *Wellness*, 575 U.S. at 669, 679.

The Bankruptcy Rules thus require adversary-proceeding parties to plead whether they consent to final orders by the bankruptcy judge. Fed. R. Bankr. P. 7008, 7012(b). And *Roell*'s implied-consent standard—established in the magistrate judge context—governs that consent. *Wellness*, 575 U.S. at 685.

***Implications of the panel's decision.*** The panel's rule cuts to the heart of consent jurisdiction in both systems. The panel's premise is that—as a constitutional matter—the right to Article III adjudication may be waived only where a party has *actual* knowledge of a potential conflict. Op. 8. Under the rule, any undisclosed connection between a judge and counsel, if not "actually known" in its full "nature and extent," can require vacatur years later—even if discoverable, and without any showing of bias or concealment. Op. 9–12; *see* ROA.22916 (Port disclaiming any claim of "fraud, bias, or undue influence").

As the dissent observed, a rule of that breadth "jeopardizes virtually all magistrate and bankruptcy judge orders." Op. 14 (Oldham, J., dissenting). Indeed, in some cases (as here), it would allow *each* side

to object after the fact to a judge's connections to the other side, permitting vacatur by whichever side loses. *Id.* at 31. Given the critical role of Article I judges and consent jurisdiction in managing the federal docket, such consequences should be imposed, if at all, only by the full Court.

## II. The Decision Is Contrary To The Statute And Precedent.

Congress permits vacatur of a consent referral only "under extraordinary circumstances shown by any party." 28 U.S.C. § 636(c)(4). The Supreme Court has held that an "extraordinary circumstances" standard requires the movant to be faultless, and that a party who failed to discover facts it should have known does not qualify. *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 212 (2025); *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 n.11 (1988). That standard makes sense here: if consent could be easily withdrawn, it would undermine the efficiency and utility of the system Congress created. The majority does not engage the statutory text.

Perhaps the majority ignores the statute because it frames its rule as constitutional (e.g., Op. 10–12), but precedent does not support that move either. As the dissent noted, "most matters relating to judicial

disqualification [do] not rise to a constitutional level." *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009) (citation omitted); Op. 29. The majority analogizes to guilty pleas (Op. 8–9), but even there, the Constitution "does not require complete knowledge of the relevant circumstances"; a plea is knowing if the defendant "fully understands the nature of the right and how it would likely apply in general in the circumstances." *United States v. Ruiz*, 536 U.S. 622, 629–30 (2002) (Constitution does not require disclosure of impeachment information before a plea). As the Petition also explains, this Court applies a constructive-knowledge standard in analogous contexts,[1] and the majority's rule conflicts with the two other circuits to address magistrate-judge consent, both applying a should-have-known standard.[2]

Moreover, the Supreme Court's two consent-jurisdiction decisions likewise cut against the majority's rule. In *Roell*, the Supreme Court held that consent need not be express and may be inferred from conduct where

[1] *See, e.g.*, *Kerns v. First State Bank of Ben Wheeler (In re Kerns)*, 130 F.4th 455, 463–64 (5th Cir. 2025) (bankruptcy judge recusal); *Light-Age, Inc. v. Ashcroft-Smith*, 922 F.3d 320, 322–23 (5th Cir. 2019) (arbitrator; conflict discoverable "simply by . . . running a brief internet search").

[2] *United States v. Dobey*, 751 F.2d 1140, 1142–43 (10th Cir. 1985); *Norris v. Schotten*, 146 F.3d 314, 326 (6th Cir. 1998).

the litigant "was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the Magistrate Judge." *Roell*, 538 U.S. at 590. That rule "checks the risk of gamesmanship by depriving parties of the luxury of waiting for the outcome before denying the magistrate judge's authority." *Id. Wellness* extended *Roell* to bankruptcy proceedings, adopting its test for knowing and voluntary consent and emphasizing the "pragmatic virtues" of a rule that "increas[es] judicial efficiency and check[s] gamesmanship." *Wellness*, 575 U.S. at 685.

Those decisions support a constructive-knowledge standard and the statutory extraordinary-circumstances test. If an undisclosed potential conflict was *not* reasonably discoverable, was intentionally concealed, or actually affected the result, that could support vacatur. But where, as here, a party represented by experienced counsel knows of its right to refuse consent, has the opportunity to consider and investigate the matter, and voluntarily agrees, that is knowing and voluntary consent. Such a party should not have "the luxury of waiting for the outcome," *Roell*, 538 U.S. at 590, and then objecting based on an investigation it could have conducted from the beginning.

Nor does the majority's characterization of this case as involving a "windfall verdict" and "unusually harsh" post-trial order support its rule. Op. 13. Losing litigants often feel that way. Any error in the decision is addressable on a merits appeal. Actual prejudice might support extraordinary circumstances, but the Port itself disclaimed any actual bias, fraud, or undue influence. ROA.22916. The sole question here is whether a party that consented and cannot meet the statutory standard for vacatur has a constitutional right to vacate a judgment based on a potential conflict it could have discovered earlier. No such right exists.

## III. The Panel's Rule Is Not Practical Or Workable For Magistrate Judges, Bankruptcy Judges, Or District Judges.

The panel's rule invites a dangerous precedent in which parties may comb through years-old social media content or community ties after an unfavorable result, weaponizing ordinary relationships to undermine final judgments. It could spawn widespread retroactive challenges to cases tried by magistrate judges in close-knit legal communities, even absent any allegation or proof of bias. *See* Op. 28–29 (Oldham, J., dissenting) (rule "entitles losers to disingenuously say they lacked knowledge of any conflict" and "empower[s] parties to retroactively revoke" consent).

As a practical matter, requiring actual knowledge of a relationship for valid consent is untenable. Magistrate judges are, by virtue of their selection process, drawn from the legal communities in which they serve. They are typically selected after years of public service and are highly likely to have connections to many parties and litigants. This pattern is especially prevalent in small legal communities like Lake Charles, but it is far from exclusive to those settings. *See* Op. 29 (Oldham, J., dissenting) (quoting Doc. 78 at 17). So too for bankruptcy judges drawn from specialized and local bankruptcy bars. *Id.* The record proves the point: the Port's own lawyers had practiced with Judge Kay, chaired the panel recommending her appointment, and interacted with her on Facebook. Op. 7; *id.* at 15, 19 (Oldham, J., dissenting). Had the Port prevailed, IFG could have invoked those connections under the panel's rule. *Id.* at 31.

Thus, under an actual-knowledge standard, magistrate and bankruptcy judges would spend much of their time making disclosures and defending challenges. Inevitably, they may fail to disclose a tangential connection that losing parties then seize on. That result would be impractical and destructive to the central purposes of consent

jurisdiction: relieving district courts and giving parties an efficient alternative route to judgment.

The actual-knowledge standard also guarantees that judges will face invasive post-judgment evidentiary hearings like the one Judge Kay underwent here, which included review of her private text messages and examination on the stand. *See* Op. 29 (Oldham, J., dissenting); *see also, e.g.*, Op. 5–6; Appellant's Op. Br. 18. For involved community members like magistrate and bankruptcy judges, this process—sharing details about, and opinions of, their relationships—would be offensive and fraught. Besides diminishing the utility and integrity of consent jurisdiction, it could deter applicants for magistrate and bankruptcy judgeships.

An actual-knowledge standard would also overrun district courts with challenges to consent referrals—undercutting the utility of consent jurisdiction in the first place. The panel's rule sets the bar for such challenges extremely low and lets parties strategically delay investigating and raising concerns until after a loss. This could skyrocket the number of challenges, however unfounded, that judges must field and that district courts must review. Nor has the panel explained how its

standard would be applied—whether actual knowledge may be inferred, what proof suffices, or whose knowledge is imputed to a party. *See* Op. 30–31 (Oldham, J., dissenting).

Consent jurisdiction benefits parties, judges, and district courts alike, while leaving parties free to decline consent. Lowering the bar for consent-based challenges cuts the benefits of the system off at the knees.

## CONCLUSION

The petition for rehearing en banc should be granted.

Respectfully submitted,

Dated: October 20, 2026

*/s/ David R. Carpenter*
David R. Carpenter
*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(b)(4) because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2, it contains 2,536 words, which is fewer than the 2,600 words permitted.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Fifth Circuit Rule 32.1 and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

Dated: October 20, 2026

*/s/ David R. Carpenter*
David R. Carpenter
*Counsel for Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system. All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

*/s/ David R. Carpenter*
David R. Carpenter
*Counsel for Amici Curiae*

## APPENDIX: LIST OF AMICI CURIAE

**Hon. W. Royal Furgeson, Jr. (ret.)**
Former District Judge
Western District of Texas
Northern District of Texas

**Hon. Mildred E. Methvin (ret.)**
Former Magistrate Judge
Western District of Louisiana

**Hon. Brian Owsley (ret.)**
Former Magistrate Judge
Southern District of Texas

**Hon. Viktor V. Pohorelsky (ret.)**
Former Magistrate Judge
Eastern District of New York

**Hon. Stephen Wm. Smith (ret.)**
Former Magistrate Judge
Southern District of Texas

**Hon. Judith K. Fitzgerald (ret.)**
Former Bankruptcy Judge
Western District of Pennsylvania